THE NEW HAVEN BANK N. B. A., RECEIVER, *vs.* CHRISTOPHER C. JACKSON ET ALS.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, JS.

Argued January 2d—decided February 5th, 1935.

*William J. McKenna,* with whom was *Anthony A. E. DeLucia,* for the appellants (defendants).

*Leon M. Gabriel,* for the appellee (plaintiff).

MALTBIE, C. J.  The plaintiff brought this action to foreclose a mortgage for $10,000, making the New Italian Co-operative Company, Incorporated, and the Workingmen's Investment Company defendants, among others, upon the ground that the owner of the equity had made a subsequent mortgage of the property for $2500 to the former and that this mortgage had been assigned to the latter.  These defendants filed an answer and cross-complaint in which they alleged that the value of the property mortgaged with the improvements on it was about $25,000, and that it was capable of division without impairing its value; and they asked an apportionment of the mortgages upon the land and the limitation of the foreclosure of the plaintiff's mortgage to such portion as would be adequate to satisfy it, leaving the remainder subject to the defendants' mortgage, without obligation upon them to redeem the plaintiff's mortgage.  To this answer and cross-complaint the plaintiff demurred and

the appeal raises solely the question of the correctness of the ruling of the trial court sustaining this demurrer.

In the situation disclosed by the record the doctrine of marshaling securities has, of course, no application. "As a general rule, however, before a court of equity will marshal securities between two persons, it must appear (1) that they are creditors of the same debtor, (2) that there are two funds belonging to that debtor, and (3) that one of them alone has the right to resort to both funds." *Quinnipiac Brewing Co.* v. *Fitzgibbons,* 73 Conn. 191, 196, 47 Atl. 128. In an early case it was stated that this equitable doctrine could not apply in an action to secure a strict foreclosure of a mortgage; *Mix* v. *Hotchkiss,* 14 Conn. 32, 44; but in *Andreas* v. *Hubbard,* 50 Conn. 351, 364, we pointed out that an equivalent result could be reached by a circuitous method, which, as the citations given show, would be by the payment of the mortgage being foreclosed by the subsequent mortgagee, resulting in his being subrogated to the rights of the owner of that mortgage as against the lot not included in his own mortgage. In the late case of *Lomas & Nettleton Co.* v. *DiFrancesco,* 116 Conn. 253, 258, 164 Atl. 495, we suggested that if, under proper pleadings, the owner of a mortgage upon one of two lots covered by a mortgage being foreclosed could prove that by the appropriation of the lot not included in his mortgage, the mortgage being foreclosed would be fully paid, the court, in the absence of countervailing equities, might perhaps be justified in restricting the foreclosure to that lot. In this case the defendants ask us to go further and hold that where both mortgages cover the same property, which is treated in both as a unit, the court should apportion so much of the property to the first mortgage as would, upon foreclosure and appropria-

tion, satisfy it, leaving the remainder subject only to their mortgage.

In *Spencer* v. *Waterman,* 36 Conn. 342, 344, in answer to a somewhat similar claim, we said: "It is manifest that the land cannot be divided, for the mortgagee has the right to the whole as security for his claim, and he cannot be compelled to take a portion of the land in payment, for he has the right to the whole unless his claim is paid in money." In *Andreas* v. *Hubbard,* supra, p. 370, we stated that "a first mortgagee can never be required to submit to an apportionment of his debt." It is true that in the last mentioned case we said (p. 369) that there was "a certain degree of justice" in the contention that a first mortgagee ought not to be permitted, by strict foreclosure, to acquire land the value of which substantially exceeded the amount of the mortgage debt, leaving no security for the second mortgage; and in *Staples* v. *Hendrick,* 89 Conn. 100, 106, 93 Atl. 5, we referred to the hardship which might be caused by the necessity that the second mortgagee should redeem the first mortgage in order not to forfeit his debt. But the remedy to avoid this situation is not that which these defendants invoke. They have no equity upon which to rest their claim, for in taking the second mortgage, the Co-operative Company voluntarily subjected itself to all the rights of the holder of the first mortgage, and the Investment Company, the assignee of the second mortgagee, stands in no better situation. The sole basis of the claimed equity is that the mortgagee, by asserting his right to the whole property, might thereby secure a greater value than the amount of his debt, to the loss of the holder of the second mortgage. But if such an equity be recognized in behalf of the second mortgagee, it might equally well be asserted by the mortgagor himself. The result would

be that relief by apportionment of the mortgage would be demanded in most foreclosure actions and they would resolve themselves quite largely into actions in the nature of partition suits, not within the scope of that remedy as established by the statutes. *Spencer* v. *Waterman,* supra.

The remedy of the second mortgagee in such a case as this, if he cannot or does not wish to redeem, is by application for an order of sale under the statutes; General Statutes, § 5112, *et seq.;* and we have suggested that one purpose of this statutory remedy was to meet just such a situation as is here present. *Staples* v. *Hendrick,* supra. It is true that the grant of such an application rests in the sound discretion of the court; *Bradford Realty Corporation* v. *Beetz,* 108 Conn. 26, 31, 142 Atl. 395; but if there is need of a sale to protect the just rights of the parties, we have little fear that the court will not order it.

There is no error.

In this opinion the other judges concurred.