## AMRESCO NEW ENGLAND II, L.P., ET AL. *v.* DOMINIC COLOSSALE ET AL.
### (AC 20259)

Foti, Spear and Peters, Js.

Argued December 11, 2000—officially released April 24, 2001

*Paul N. Gilmore,* with whom, on the brief, was *Sara N. Robinson,* for the appellant (substitute plaintiff).

*Donald Gaudreau,* for the appellees (named defendant et al.).

*Opinion*

PETERS, J. The principal issue in this mortgage foreclosure action is whether a mortgagee can require a trial court to order a strict foreclosure on all the separate parcels covered by a blanket mortgage if a foreclosure limited to fewer than all parcels will satisfy the mortgage debt. Exercising its equitable discretion, the court ordered a limited strict foreclosure. The mortgagee challenges the validity of this order. The validity

of the court's order raises a question of first impression for this court. We affirm the judgment.

The plaintiff, Amresco New England II, L.P. (Amresco),[1] brought an action for strict foreclosure on five separate and noncontiguous parcels of property on which it held a blanket mortgage that secured a note signed by the defendants Dominic Colossale and others (Colossales).[2] The Colossales requested an order of strict foreclosure limited to parcels one and two, supplemented by a small cash contribution that they had submitted to the court.[3] Finding the Colossales' request for a limited foreclosure to be fair and equitable, the court rendered judgment accordingly. Amresco has appealed.

The parties stipulated to all of the relevant facts. On or about March 1, 1996, Amresco acquired a previously executed promissory note that is presently secured by a mortgage on five parcels of property owned by the Colossales. The note presently is in default. At the time of judgment, the mortgage foreclosure debt totaled $476,870.89.[4] The total fair market value of all five par-

---

[1] During the pendency of the foreclosure proceedings, the plaintiff transferred its rights to another entity, Pendragon Real Estate Corporation. Because the parties have continued to refer to the plaintiff as Amresco, we shall do the same.

[2] The defendants obligated under the note are Dominic Colossale, Virginia Colossale and Colossale ReadyMix, Inc.

[3] Although the possibility of foreclosure by sale was discussed at trial, neither Amresco nor the Colossales moved for such a foreclosure. At one point during the proceedings, Bank United, a creditor with an attachment lien junior to the Amresco mortgage, filed a motion for foreclosure by sale, but withdrew that motion before the court rendered judgment.

The court's memorandum of decision, in addition to noting the absence of a request for foreclosure by sale, made findings about whether such a foreclosure would be equitable. It held to the contrary, stating that "[a] foreclosure by sale would unnecessarily add to costs, and being a forced sale, might result in diminished values."

[4] The mortgage foreclosure debt of $476,870.89 consisted of $321,973.32 principal, $117,397.57 interest and $37,500 attorney's fees and costs.

cels was $1,374,500.[5] The mortgage debt will be satisfied in full by strict foreclosure on the first and second parcels that jointly have a fair market value of $475,500, supplemented by the Colossales' submission to the court of ready funds equaling $1370.89.

On appeal, Amresco has raised two issues of law. It argues that the court improperly (1) limited the number of parcels on which it could foreclose and (2) granted the Colossales' claim for a reduction in the amount of the interest owed to Amresco. We are not persuaded by the merits of either claim.

I

For six reasons, Amresco maintains that the trial court improperly denied its request for strict foreclosure of all of the parcels of property that secured the Colossales' defaulted debt. It argues that a limited strict foreclosure (1) is not authorized by Connecticut substantive law, (2) is not authorized by Connecticut procedural law because proper pleadings had not been filed, (3) may be sought only upon the request of a junior lienor, (4) may be granted only with the consent of the foreclosing mortgagee, (5) may not be granted in the absence of a motion by the debtors seeking a foreclosure by sale and (6) violates a secured creditor's federal constitutional right to due process. We disagree with each of these contentions.

Because the parties stipulated to the underlying facts, we are limited to reviewing questions of law. Our review is therefore plenary.[6] *SLI International Corp.* v. *Crys-*

---

[5] As stipulated, the fair market value of each of the parcels was as follows:
Parcel one: $354,500;
Parcel two: 121,000;
Parcel three: 121,500;
Parcel four: 302,500;
Parcel five: 375,000.

[6] We disagree with the assertion of the Colossales that, with respect to the foreclosure issue, the proper standard of review is a determination of whether the judgment of the court was an abuse of its discretion. This

*tal,* 236 Conn. 156, 163, 671 A.2d 813 (1996); *Connecticut Post Ltd. Partnership* v. *South Central Connecticut Regional Council of Governments,* 60 Conn. App. 21, 25, 758 A.2d 408, cert. granted on other grounds, 255 Conn. 903, 762 A.2d 907 (2000).

Amresco's principal argument is that a foreclosure court lacks substantive authority to render a judgment of limited strict foreclosure for a blanket mortgage, even when the mortgage covers several noncontiguous parcels of property. The parties have not pointed to any specifically applicable statute or case law that squarely permits or precludes a limited order of foreclosure. Amresco appears to take the position that the court needed express authority to proceed as it did, while the Colossales appear to take the position that the general equitable authority of a foreclosure court includes the power to determine the manner of foreclosure.

The closest statute on point is General Statutes § 49-24.[7] It permits a trial court to determine whether to order a strict foreclosure or a foreclosure by sale. It contains no guidance about the manner in which a foreclosure is to be conducted. Neither party contends that § 49-24, by its terms, expressly addresses limited foreclosures.[8]

The cases on which the parties rely are similarly inconclusive. All of the cited cases are distinguishable on their facts and by the procedural form in which the

assertion misstates significant aspects of Amresco's appeal. Amresco challenges the authority of the court to exercise any discretion at all to limit the scope of its foreclosure judgment.

[7] General Statutes § 49-24 provides: "All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be foreclosed by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending."

[8] Amresco relies, in part, on General Statutes § 49-25. That statute is inapplicable because it addresses foreclosures by sale.

cases arose. Amresco urges us to follow the reasoning of two cases that arose in the context of a foreclosure on a single piece of property. In both cases, our courts affirmed a trial court decision that declined to order an apportionment of the property. *New Haven Bank* v. *Jackson*, 119 Conn. 451, 177 A. 387 (1935); *Voluntown* v. *Rytman*, 21 Conn. App. 275, 573 A.2d 336, cert. denied, 215 Conn. 818, 576 A.2d 548 (1990). Neither court discussed the authority of a trial court to come to the opposite conclusion. *Jackson* focused on the importance of maintaining a distinction between foreclosure actions and partition actions; *New Haven Bank* v. *Jackson*, supra, 454–55; a distinction that is irrelevant here, where the mortgaged properties are separate and noncontiguous. Like *Jackson*, *Voluntown* deals with the foreclosure of a single undivided parcel covered by a mortgage.[9]

The cases on which the Colossales rely likewise do not govern this case. Although these cases comment favorably on the possibility of a court order of limited foreclosure, neither involved a request for limited strict foreclosure on the part of the original mortgagor. *New England Mortgage Realty Co.* v. *Rossini*, 121 Conn. 214, 183 A. 744 (1936); *Lomas & Nettleton Co.* v. *DiFrancesco*, 116 Conn. 253, 164 A. 495 (1933). *Rossini* concerned the proper sequence for foreclosure among defendants who were successive grantees of discrete portions of the underlying mortgaged property and not the original mortgagor. The *Rossini* court held only that equitable principles support apportionment of the debt between two successive grantees of discrete portions of the mortgaged property and that such apportionment could be implemented by foreclosure in inverse order of alienation of each of the several parcels

---

[9] Even though that property was traversed by a highway, the court characterized it as a single piece of property. *Voluntown* v. *Rytman*, supra, 21 Conn. App. 277–78.

by the mortgagor. *Lomas* considered the merits of a limited strict foreclosure designed to protect the rights of a junior lienor. The court approved such a limited foreclosure in principle, but did not apply the principle because of a procedural failure to raise the relevant issues at trial.

In the absence of binding statutory directions or dispositive common-law precedents, we view this case through the lens of the equitable discretion that governs mortgage foreclosure cases. For more than a century, our Supreme Court has held that a court of equity may devise the remedy that is appropriate for the enforcement of a lawful judicial lien. *Chappell* v. *Jardine*, 51 Conn. 64, 69 (1884). Because "[f]oreclosure is peculiarly an equitable action . . . the court may entertain such questions as are necessary to be determined in order that complete justice may be done." *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, 153 Conn. 457, 463, 217 A.2d 694 (1966). In a foreclosure proceeding, "the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Northeast Savings, F.A.* v. *Hintlian*, 241 Conn. 269, 275, 696 A.2d 315 (1997), quoting *Citicorp Mortgage, Inc.* v. *Burgos*, 227 Conn. 116, 120, 629 A.2d 410 (1993).

Under the circumstances of this case, we conclude that the court did not abuse its discretion in limiting Amresco's foreclosure to two parcels of mortgaged property. A full foreclosure that would have given Amresco a substantial and undeserved windfall would not have comported with principles of equity. See *Issler* v. *Issler*, 250 Conn. 226, 241, 737 A.2d 383 (1999); *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 399, 216 A.2d 814 (1966). It is hornbook law that the mortgage follows the note. *New Milford Savings Bank* v.

*Jajer*, 244 Conn. 251, 266, 708 A.2d 1378 (1998). "The mortgage cannot survive the extinction of the debt." Id., citing *Hartford National Bank & Trust Co.* v. *Kotkin*, 185 Conn. 579, 581, 441 A.2d 593 (1981). A mortgagee is entitled to full payment of the debt, but no more. *Lomas & Nettleton Co.* v. *DiFrancesco*, supra, 116 Conn. 258. The court's order assured the mortgagee of that full payment. The court's order, therefore, was an entirely appropriate exercise of its equitable discretion. See *New England Mortgage Realty Co.* v. *Rossini*, supra, 121 Conn. 219.

Amresco's remaining nonconstitutional objections to the order of limited foreclosure are also unavailing. These objections argue (1) a procedural default in the pleadings at trial, (2) a substantive impropriety in allowing a mortgagor, rather than a junior lienor, to seek a limited foreclosure, (3) a substantive impropriety in ordering a limited foreclosure to which Amresco had not consented and (4) that the Colossales' sole remedy was to file a motion for foreclosure by sale. None of these arguments is persuasive and none warrants extensive discussion.

Amresco faults the pleadings because remedial issues were raised during the trial that had not been set forth clearly in the initial pleadings. It cites no authority for the proposition that, in the absence of a timely objection at trial, the court was precluded from considering these issues on their merits. The *Lomas* case, on which it relies, concerned a total failure to raise an issue at trial. That is not the situation here.

Amresco claims that only a junior lienor, and not a defaulted mortgagor, may request an apportionment of mortgaged property. Again, it cites no case that so holds.

Amresco similarly cites no authority affording a foreclosing mortgagee a veto power over the manner of

foreclosure in the absence of timely opposition at trial. It also cites no authority requiring a mortgagor to seek a foreclosure by sale. As the court noted, foreclosures by sale, as forced sales, may produce less funds than could be attributed to the fair market value calculation in a strict foreclosure.

Finally, Amresco claims that its federal constitutional right to due process under the fourteenth amendment of the United States constitution was impaired by the court's order of limited strict foreclosure. The court's order, according to Amresco, deprived it of the benefit of its mortgage and deprived it of duly negotiated contract rights. It claims that the court had no authority whatsoever to extinguish its mortgage on parcels three, four and five. The flaw in this argument is that it presumes that the decision of the court caused cognizable injury to Amresco. There was no such injury because the full payment of a mortgage debt automatically extinguishes a mortgage given to secure the debt.

In conclusion, although Amresco has laid out numerous challenges to the validity of the order of limited foreclosure, we are persuaded that the court, in exercising its equitable authority, was not barred from considering an order of limited strict foreclosures. Under the circumstances of this case, the court did not abuse its equitable discretion in limiting its order of foreclosure to two discrete separate parcels of land that were the subject of a blanket mortgage. The undisputed facts show that a limited foreclosure will permit Amresco to receive the full value of the mortgage debt that was secured by the blanket mortgage. It was not an abuse of discretion to deprive Amresco of the windfall that it would have received had a full foreclosure been ordered.

## II

Amresco's second major argument concerns the validity of the court's decision to stop the accrual of

interest on the mortgage debt on November 4, 1999, the date when the trial ended. Amresco concedes that a trial court's ruling on abatement of interest is reviewed only for an abuse of discretion. *Hamm* v. *Taylor*, 180 Conn. 491, 497, 429 A.2d 946 (1980). We can discern no such abuse of discretion in this case.

Amresco maintains that the court's decision to stop the accrual of interest was made solely to "bully" Amresco into making unspecified, unwarranted concessions. That claim is unsubstantiated in the record. Although the court indicated its surprise at Amresco's intent to appeal, there was no necessary linkage between its observation and its ruling on the accrual of interest. On the record, the court stated that its ruling was made to discourage further delay in the proceedings. It also adverted to other general considerations, which Amresco did not try to explore further. If Amresco considered the ruling to be the result of bias arising out of disapproval of Amresco's intention to appeal, Amresco might have moved to disqualify the judge on that basis. It did not do so. This is not an issue appropriately raised for the first time on appeal. See *Krattenstein* v. *G. Fox & Co.*, 155 Conn, 609, 615–16, 236 A.2d 466 (1967).

We conclude that the termination of future interest, under the circumstances of this case, did not constitute an abuse of discretion. The court was free to decide as it did.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.