******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TORO CREDIT COMPANY *v*. BETTY ANNE ZEYTOONJIAN, TRUSTEE, ET AL.
## (SC 20534)

McDonald, D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff sought to foreclose a mortgage on commercial property owned by the defendants that was comprised of parcel A and parcel B, and secured by a promissory note. A remedies provision in the mortgage agreement between the parties permitted the plaintiff to seek foreclosure by sale of both parcels. After the defendants defaulted on the promissory note, the plaintiff commenced the present action and requested that the trial court render judgment of foreclosure by sale of both parcels. After a trial, the court concluded that foreclosure by sale, rather than strict foreclosure, was the most appropriate remedy. The court determined that it was not bound by the remedies provision in the mortgage agreement but considered it as one factor in its balancing of the equities. In addition, the court, in balancing the equities, considered, inter alia, that the plaintiff successfully bargained for the right to select the remedy of foreclosure by sale and that it is generally an abuse of discretion not to order a foreclosure by sale when, as in the present case, the fair market value of the property substantially exceeds the amount of the debt. The trial court ordered the sale of both parcels, either together or separately depending on the defendants' preference, to protect the plaintiff's interest in its security and to ensure that any value realized in excess of the amount owed would redound to the defendants' benefit. The defendants appealed from the trial court's order of foreclosure by sale, claiming that the court should not have considered the remedies provision in the mortgage agreement and that foreclosure by sale of both parcels was inequitable when strict foreclosure as to parcel A would have fully satisfied the defendants' debt. *Held*:

1. The trial court having determined the method of foreclosure and the amount of debt, the defendants appealed from a final judgment, and the fact that the trial court's decision contemplated further orders regarding the details of the foreclosure sale did not affect the finality of the judgment for purposes of appellate jurisdiction.

2. The trial court did not abuse its discretion in ordering a foreclosure by sale of both parcels: although strict foreclosure might have technically satisfied the debt owed by the defendants if the plaintiff had taken title to parcel A, it would have left the plaintiff in a position that it specifically had not bargained for, namely, holding title to real estate; moreover, it was not clear that strict foreclosure would have made the plaintiff whole in the way it envisioned when it acquired the mortgage, because strict foreclosure might have been ordered only as to parcel A, as the appraised value of that parcel was slightly greater than the amount of the defendants' debt, the plaintiff thereby would have been required to release its interest in parcel B, and, if the plaintiff had been unsuccessful in selling parcel A at its appraised value, it would have lost the ability to satisfy any deficit by selling parcel B; furthermore, the trial court did not abuse its discretion in considering the remedies provision in the mortgage agreement as one factor in its consideration, as there was no principled reason why the court should have been barred from considering the contract language in the parties' agreement when there was no argument that the parties were not on equal footing in negotiating the mortgage, the defendants' concern about an unfair windfall to the plaintiff as a result of a forced sale of both parcels was unwarranted, as any proceeds from such a sale that exceeded the amount of the foreclosure judgment and costs of the sale would be returned to the defendants, and strict foreclosure as to only one parcel would have defeated the plaintiff's purpose in encumbering the two parcels with one mortgage to secure the defendants' debt.

Argued February 25—officially released November 9, 2021*

*Procedural History*

Action to foreclose a mortgage on certain commercial properties owned by the defendants, and for other relief, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sicilian, J.*; order of foreclosure by sale, from which the defendants appealed; thereafter, Mark A. Zeytoonjian was substituted for the named defendant. *Affirmed.*

*William S. Fish, Jr.*, with whom was *Sara J. Stankus*, for the appellants (defendants).

*Jeffrey R. Babbin*, with whom were *Matthew C. Brown* and, on the brief, *Sean M. McAuliffe*, for the appellee (plaintiff).

*Opinion*

D'AURIA, J. In this appeal, we are asked to determine whether the trial court abused its discretion when it ordered a foreclosure by sale as to two parcels of land owned by the defendants, Betty Anne Zeytoonjian, as trustee of the Nubar Realty Trust, and Three Z Limited Partnership,[1] and secured by a blanket mortgage given to the plaintiff, Toro Credit Company. The parties' mortgage agreement contains a remedies provision that provides that, in the event the defendants default on the mortgage, the plaintiff could seek a foreclosure by sale as to both parcels. The trial court determined that the remedies provision was not binding on it but, nonetheless, considered this contractual provision as one factor in its balancing of the equities under General Statutes § 49-24.[2] The defendants claim that the trial court abused its discretion by ordering a foreclosure by sale as to their two properties because (1) the court should not have considered the remedies provision at all, and (2) it was inequitable for the court to order a foreclosure by sale as to both parcels when a strict foreclosure as to one parcel would have fully satisfied the debt. We conclude that the trial court did not abuse its discretion when it granted the plaintiff's request for a foreclosure by sale under these circumstances. Accordingly, we affirm the trial court's order of foreclosure by sale.

The record reveals the following undisputed facts and procedural history. The defendants operated Turf Products, LLC, and acted as the plaintiff's New England distributor. In 2003, the parties restructured $14 million of debt the defendants owed the plaintiff. As part of the restructuring, the defendants granted the plaintiff various mortgages on several properties to secure a portion of the overall debt. The only mortgage at issue in this case encumbered undeveloped land, comprised of two adjacent parcels, each approximately 33 acres in area, in Enfield. The parcels were identified in the mortgage as parcel A and parcel B. This mortgage secured a promissory note in the principal amount of $1,662,500.

The mortgage contains a remedies provision, which states that, upon default, the defendants "[authorize] and fully [empower]" the plaintiff to foreclose the mortgage "by judicial proceedings or by advertisement, or render any power of sale . . . or by such other statutory procedures available in the state in which the [p]remises are located, at the option of [the plaintiff], with the full authority to sell the [p]remises at public auction. . . ." The provision states that, out of the proceeds of the sale, the plaintiff was entitled to "retain the principal, repayment fee, if any, and interest due on the [n]ote . . . ."

The defendants subsequently defaulted on the promissory note, and the plaintiff initiated this foreclosure action. The defendants never have disputed that the

plaintiff is entitled to a judgment of foreclosure because of their default. The parties disagree about the appropriate form of foreclosure. The trial court conducted a trial to determine whether to order a strict foreclosure or a foreclosure by sale and concluded that foreclosure by sale was the most appropriate equitable remedy. The court made the following factual findings in support of this determination.

First, the trial court found that, as of April 5, 2019, the total unpaid debt claimed by the plaintiff was $902,447.12, which continued to accrue with per diem interest. Each party had an appraiser value the two parcels. Both appraisers valued parcel A at $950,000; the plaintiff's appraiser valued parcel B at $850,000, whereas the defendants' appraiser valued parcel B at $840,000.

In balancing the equities, the trial court considered that the plaintiff "successfully bargained for the right to select its remedy" of foreclosure by sale, that the plaintiff might not be made whole if there was only a strict foreclosure of parcel A, that it is "generally . . . an abuse of discretion to fail to order a sale" when the fair market value of the property substantially exceeds the debt, and that the other available foreclosure options were inequitable as to one party over another. The trial court ordered the parcels sold, either bundled together or sequentially, at the defendants' choice, to protect "the plaintiff's interest in its security while ensuring that any value realized in excess of the amount owed to the plaintiff would redound to the defendants' benefit."

The trial court rejected an order of a strict foreclosure as to both parcels, as the "fair market value of the two parcels very substantially exceeds the outstanding debt" and would yield an inequitable windfall to the plaintiff. The trial court also rejected the defendants' request that it order a strict foreclosure as to only parcel A because that would "[rob] the plaintiff of a measure of the security which it was granted," namely, a mortgage on both properties. Additionally, the trial court was concerned that strict foreclosure of parcel A would "leave the risk of a shortfall entirely" on the plaintiff after taking title to the property and then selling it. Last, the trial court rejected a "forced sale of the combined parcels . . . ." The trial court reasoned that, while the sale of both parcels would generate the most value, it would eliminate the possibility that the defendants could retain parcel B if the sale of parcel A satisfied the debt.[3]

From the trial court's order of foreclosure by sale, the defendants appealed to the Appellate Court, and the appeal was transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

After oral argument before this court, we sua sponte ordered the parties to file supplemental briefs addressing whether the defendants had appealed from a final judgment. See General Statutes § 52-263. Clearly, because the trial court's ruling did not end the case, it was not a "final judgment" in that sense, and we have on many occasions indicated that orders that are "a step along the road to final judgment" are not appealable. (Internal quotation marks omitted.) *Abreu* v. *Leone*, 291 Conn. 332, 339, 968 A.2d 385 (2009). Nevertheless, there are areas of our law in which we have held that certain steps along that road, although not literally final, inasmuch as the case goes on, are considered final judgments for purposes of appellate jurisdiction under § 51-199. Foreclosure is one such area. Recently, we stated that there are three appealable determinations in a case involving a foreclosure by sale: "the judgment ordering a foreclosure by sale, the approval of the sale by the court and the supplemental judgment [in which proceeds from the sale are distributed]." (Internal quotation marks omitted.) *Saunders* v. *KDFBS, LLC*, 335 Conn. 586, 592, 239 A.3d 1162 (2020). "The first determination is deemed final if the trial court has determined the method of foreclosure and the amount of the debt." Id., 593. Because the trial court in the present case determined the method of foreclosure (foreclosure by sale) and the amount of the debt ($902,447.12),[4] we conclude that the defendants appealed from a final judgment. The fact that the trial court's decision contemplated further orders regarding the details of the sale does not affect the finality of the judgment under these circumstances. See, e.g., *Benvenuto* v. *Mahajan*, 245 Conn. 495, 501, 715 A.2d 743 (1998) (judgment of strict foreclosure is final for purposes of appeal, even though recoverability or amount of attorney's fees for litigation, and, thus, total amount of debt, remained to be determined); *Bank of New York Mellon* v. *Mazzeo*, 195 Conn. App. 357, 362 n.6, 225 A.3d 290 (2020) ("[a] judgment ordering a foreclosure by sale is a final judgment for purposes of appeal even if the court has not set a date for the sale"); *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 836–38, 779 A.2d 174 (2001) (same); see also *Moran* v. *Morneau*, 129 Conn. App. 349, 357, 19 A.3d 268 (2011) (postjudgment orders contemplated by trial court's decision were interlocutory decisions), overruled in part on other grounds by *Saunders* v. *KDFBS, LLC*, 335 Conn. 586, 239 A.3d 1162 (2020).

## II

In support of their claim that the trial court abused its discretion by ordering a foreclosure by sale as to the two parcels,[5] the defendants argue that (1) strict foreclosure is the general rule in Connecticut, and strict foreclosure of only parcel A would have satisfied the debt, (2) foreclosure by sale exposes them to a loss in

value as to parcel B and a deficiency judgment if parcel A sells for less than its appraised value, and (3) in exercising its equitable discretion, the trial court should not have considered the remedies provision of the mortgage. We are not persuaded and conclude that the trial court did not abuse its discretion by ordering a foreclosure by sale.

In foreclosure matters, this court reviews the trial court's exercise of its equitable powers for an abuse of discretion. See, e.g., *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 336 Conn. 633, 639, 249 A.3d 327 (2020). "In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Angle*, 284 Conn. 322, 326, 933 A.2d 1143 (2007). "Although we ordinarily are reluctant to interfere with a trial court's equitable discretion . . . we will reverse [the court's judgment] where we find that a trial court acting as a court of equity could not reasonably have concluded as it did . . . or to prevent abuse or injustice." (Internal quotation marks omitted.) *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 640.

Specifically, "whether to order a strict foreclosure or a foreclosure by sale is a matter committed to the sound discretion of the trial court, to be exercised with regard to all the facts and circumstances of the case." *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 284, 630 A.2d 1010 (1993). "A judgment of strict foreclosure, when it becomes absolute and all rights of redemption are cut off, constitutes an appropriation of the mortgaged property to satisfy the mortgage debt." *Bugg* v. *Guilford-Chester Water Co.*, 141 Conn. 179, 182, 104 A.2d 543 (1954). "[I]n a strict foreclosure, the vesting of title operates to reduce the debt by the value of the property." *National City Mortgage Co.* v. *Stoecker*, 92 Conn. App. 787, 794, 888 A.2d 95, cert. denied, 277 Conn. 925, 895 A.2d 799 (2006). "The purpose of the judicial sale in a foreclosure action is to convert the property into money and, following the sale, a determination of the rights of the parties in the funds is made, and the money received from the sale takes the place of the property." (Internal quotation marks omitted.) *Saunders* v. *KDFBS, LLC*, supra, 335 Conn. 594.

This dispute arises out of the defendants' default of a debt restructuring that derived to them by virtue of their long-term business relationship with the plaintiff. Both the plaintiff and the defendants are commercially sophisticated and were represented by counsel at all pertinent times. The plaintiff specifically bargained for, and the defendants agreed to, a blanket mortgage on both parcels and for the remedy of foreclosure by sale. "A contract must be construed to effectuate the intent of the parties, which is determined from the language

used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). We previously have explained that "[j]udicial deference to freedom of contract is particularly appropriate" in cases in which a private lender and borrower are "presumed to have had equal access to the financial marketplace when the mortgage was first negotiated." *Olean* v. *Treglia*, 190 Conn. 756, 768, 463 A.2d 242 (1983).

In considering the remedies provision of the contract when balancing the equities, the trial court doubtlessly was aware of the fact that not only had the plaintiff bargained for the right to a foreclosure by sale but that such a provision implicates other integral mortgage provisions, including the interest rate, length of term, and sources of collateral. The plaintiff might have made concessions it would not have acquiesced to had it not succeeded in obtaining this remedies provision. As a result, although strict foreclosure might technically satisfy the debt if the plaintiff took title to parcel A, it would leave the plaintiff in the position it specifically had bargained *not* to be in: holding title to real estate. There might have been very good business reasons why the plaintiff, a Minnesota based company, did not want to become a Connecticut property owner, with all the attendant responsibilities and consequences. The record also casts doubt that strict foreclosure would make the plaintiff whole in the way it envisioned when accepting the mortgage. The trial court noted that, after considering the time and costs associated with selling parcel A, the plaintiff might not realize the full appraisal value to satisfy the debt. Strict foreclosure of parcel A would force the plaintiff to take the precise risk that it tried to protect against by securing the property with a blanket mortgage. As we will explain, if the trial court orders strict foreclosure only as to parcel A because the appraised value of that parcel satisfies the debt, the plaintiff must release its interest in parcel B, and if the plaintiff is later unsuccessful at selling parcel A at its appraised value, the plaintiff will lose the ability to foreclose as to parcel B. See *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 261 and n.14, 708 A.2d 1378 (1998) (suggesting that mortgagee might waive right to foreclose on particular parcel when "mortgagee intentionally elected not to foreclose on one of several parcels securing the mortgage"). The trial court reasonably considered that it would be inequitable to place the parties in a position they did not contemplate when entering into this agreement.

The defendants, however, argue that the trial court abused its discretion by considering the remedies provision in the mortgage contract at all. This argument is premised on the proposition that parties cannot contract around § 49-24 because to do so would violate public policy by depriving the trial court of its discretion

to determine an equitable remedy. Although this argument might have some teeth if the parties were disputing whether the contract was binding, this public policy concern does not arise in this particular case because the parties made no such argument, and the trial court explicitly held that the remedies provision was "not determinative" but, instead, was only "a factor in the court's consideration."[6] See footnote 6 of this opinion. Like the trial court, we agree that "due consideration of the parties' bargained-for remedies provision is appropriate in the balancing of [the] parties' competing interests," as long as the overall agreement was not the result of duress, misrepresentation, or mutual mistake—none of which the defendants argue in the present case. See *Mack Financial Corp.* v. *Crossley*, 209 Conn. 163, 168, 550 A.2d 303 (1988) ("Commercial contracting parties have considerable freedom to determine the remedial rights that will ensue upon breach. . . . Absent some cogent reason such as mistake or unconscionability, there is no reason why a court should not enforce the bargain that the parties have made." (Footnote omitted.)). Even if we were to assume that public policy reasons prohibit parties from contracting around § 49-24, an issue we have not decided; see footnote 5 of this opinion; we see no principled reason why the trial court should be barred from considering the contract language in the present case when there is no argument that the parties were on unequal footing in negotiating the mortgage. As a result, the trial court's consideration of the remedies provision was not inequitable but, rather, constituted an appropriate exercise of discretion.

In the present case, the plaintiff requested a foreclosure by sale as to the two parcels covered by the blanket mortgage, rather than a strict foreclosure.[7] The trial court granted the plaintiff this relief. If the plaintiff had not requested and been granted a foreclosure by sale, pursuant to § 49-24, the plaintiff would have been entitled to strict foreclosure as to both parcels. Given that the debt is roughly $900,000, and the appraised value of parcel A is $950,000 and parcel B between $840,000 and $850,000, if the trial court had ordered strict foreclosure as to both parcels, based on the parties' appraisals, the plaintiff would be given "a substantial and undeserved windfall" of nearly $900,000. *Amresco New England II, L.P.* v. *Colossale*, 63 Conn. App. 49, 55, 774 A.2d 1083 (2001). "Since a mortgage foreclosure is an equitable proceeding, either a forfeiture or a windfall should be avoided if possible." *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 354, 579 A.2d 1054 (1990).

*Fidelity Trust Co.* v. *Irick*, 206 Conn. 484, 538 A.2d 1027 (1988), is instructive. In *Fidelity Trust Co.*, this court held that the trial court abused its discretion in ordering a strict foreclosure when the mortgagee would have received a property that had a value in excess of

the debt by more than $17,000. Id., 487–88.

By contrast, the defendants' concern about an unfair windfall to the plaintiff as a result of a forced sale of both parcels is simply not warranted. Instead, any additional proceeds of the sale of both parcels above the total amount of the judgment and costs of sale would be returned to the defendants; see General Statutes § 49-27;[8] and further eliminates the defendants' concern about a potential deficiency judgment.

Moreover, an order of strict foreclosure as to only parcel A would have extinguished the plaintiff's interest in parcel B, security the plaintiff had bargained for to ensure recovery of the defendants' debt. See General Statutes § 49-1 ("[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation"). This court has previously explained that, "once a mortgagee strictly forecloses on a mortgage and obtains title to the property following the running of the law days, § 49-1 extinguishes all rights of the mortgagee with respect to the 'mortgage debt, note or obligation' . . . except as provided in [General Statutes] § 49-14." *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 312 Conn. 662, 671, 94 A.3d 622 (2014). Strict foreclosure of only one parcel defeats the plaintiff's purpose in encumbering the two parcels with a blanket mortgage to secure the debt. See 2 D. Caron & G. Milne, Connecticut Foreclosures (11th Ed. 2021) § 19-1:2, p. 17 ("[s]ince the main purpose behind a lender's insistence on a blanket mortgage is to maximize its security, it is not at all surprising to find that most blanket mortgages are amply secured and that a foreclosure by sale is ordered"). We therefore conclude that the trial court did not abuse its wide discretion in arriving at an equitable result.

We agree with the trial court that there is no merit in the defendants' claim that they were entitled to a strict foreclosure as to a single parcel of land as a matter of law because strict foreclosure is the rule in Connecticut and foreclosure by sale the exception. The proposition is contained in a single conclusory sentence in *National City Mortgage Co.* v. *Stoecker*, supra, 92 Conn. App. 793, unaccompanied by any citation to legal authority or analysis to support such a sweeping statement. Indeed, § 49-24 contains no language indicating that foreclosure by sale should be used only in extreme cases, or rarely, or never; rather, it plainly provides for the option of a "decree of sale instead of a strict foreclosure at the discretion of the court . . . ." General Statutes § 49-24 (1). In fact, foreclosure by sale is the preferred "decree" in situations in which the property's fair market value exceeds the debt, as in the present case. See, e.g., *US Bank National Assn.* v. *Christophersen*, 179 Conn. App. 378, 394, 180 A.3d 611 ("when the value of the property substantially exceeds the value of the lien being foreclosed, the trial court

abuses its discretion when it refuses to order a foreclosure by sale" (internal quotation marks omitted)), cert. denied, 328 Conn. 928, 182 A.3d 1192 (2018); *Voluntown* v. *Rytman*, 27 Conn. App. 549, 555, 607 A.2d 896 (same), cert. denied, 223 Conn. 913, 614 A.2d 831 (1992). It may be that the majority of foreclosure judgments are by strict foreclosure, but, if anything, that would indicate only that the majority of foreclosures arise in situations in which the value of the property is less than the debt owed. That hardly makes strict foreclosure the general rule.

The defendants also rely on *Amresco New England II*, *L.P.* v. *Colossale*, supra, 63 Conn. App. 49, in support of their argument that, when a limited strict foreclosure on a blanket mortgage can satisfy a debt, the trial court abuses its discretion by not opting for that remedy. We find this comparison inapposite. *Amresco New England II*, *L.P.*, concerned a mortgagee's request that a trial court order strict foreclosure on a blanket mortgage that covered several properties when the value of all the properties greatly exceeded the debt. Id., 50. The trial court rejected the plaintiff's request and ordered strict foreclosure as to only two properties the mortgage covered, the value of which sufficed to cover the debt. Id., 50–51. The court in *Amresco New England II*, *L.P.*, explained that the order of a limited strict foreclosure was "an entirely appropriate exercise of [the trial court's] equitable discretion"; id., 56; to avoid granting the plaintiff "a substantial and undeserved windfall . . . ." Id., 55. The present case does not involve the option of a partial strict foreclosure as to two of several parcels that secured the loan versus a full strict foreclosure as to more than two parcels, which occurred in *Amresco New England II*, *L.P.* The question here, instead, is whether the trial court abused its discretion when it ordered a foreclosure by sale, as requested by the plaintiff, instead of a partial strict foreclosure, as requested by the defendants. The exercise of equitable discretion in one way in *Amresco New England II*, *L.P.*, does not mean it is inequitable to exercise discretion in another way in this case, especially given the different interests at stake when deciding to order a foreclosure by sale versus a strict foreclosure.

Finally, if the defendants are unsatisfied with the outcome of the sale—either because of the ultimate sale price or because of the way the sale was conducted—they can contest the confirmation of the sale before the trial court. See *New England Savings Bank* v. *Lopez*, supra, 227 Conn. 277–82; see id., 280 (stating that "usual notion of fair market value is inconsistent with the notion of a foreclosure sale" in part because seller is "required to take the highest bid, subject only to the approval of the court"); see also *Central Bank for Savings* v. *Heggelund*, 23 Conn. App. 266, 270, 579 A.2d 598 ("[i]f the court wanted to protect [the defendant] from a future deficiency liability, it had the equita-

ble power at the hearing on the bank's motion for approval of the sale to disapprove the sale and instead to order a strict foreclosure"), cert. granted, 217 Conn. 804, 584 A.2d 471 (1990) (appeal dismissed February 21, 1991).

Thus, we conclude that the trial court did not abuse its discretion by ordering a foreclosure by sale.

The trial court's order of foreclosure by sale is affirmed.

In this opinion the other justices concurred.

* November 9, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Mark A. Zeytoonjian was substituted for the named defendant in this appeal on February 24, 2021.

[2] General Statutes § 49-24 provides in relevant part: "All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be foreclosed (1) by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending, or (2) with respect to mortgages, as defined in section 49-24a, that are a first mortgage against the property, by a judgment of foreclosure by market sale upon the written motion of the mortgagee, as defined in section 49-24a, and with consent of the mortgagor . . . ."

[3] It does not appear from the record that either party argued that the two parcels of land securing one promissory note were a unified security interest that could not be separated in a foreclosure action. See *Voluntown* v. *Rytman*, 21 Conn. App. 275, 280–81, 573 A.2d 336 (trial court did not abuse its discretion in denying request to sell only one of two parcels), cert. denied, 215 Conn. 818, 576 A.2d 548 (1990). Rather, both parties proceeded under the premise that the parcels could be considered as two separate security interests. Likewise, the plaintiff has not cross appealed, claiming to be aggrieved by the trial court's order rejecting a forced sale of both parcels and, instead, permitting the defendants to choose whether to have the sale conducted sequentially and which parcel to sell first, potentially permitting the defendants to retain the second parcel. Therefore, we have no occasion to consider whether the trial court had discretion to make such an order or to treat the parcels as two separate security interests.

[4] Subsequent to this court's order for supplemental briefing on the issue of whether the trial court made a finding as to the defendants' debt as of the date of its decision, the parties agreed that, notwithstanding that the trial court's memorandum of decision recites only that the "total amount *claimed* to be owed as of April 5, 2019, is $902,447.12"; (emphasis added); the court in fact determined that the amount of the debt had been established because (1) the parties do not dispute the amount of the debt, and (2) such a determination is implicit in the court's decision to order a foreclosure by sale because, otherwise, the trial court may have ordered a different method of foreclosure. We agree with the parties.

[5] The record is not clear as to whether the plaintiff requested that the trial court determine the proper remedy under § 49-24 or sought to exercise its contractual right to require foreclosure by sale. Regardless, neither before this court nor the trial court did the plaintiff argue that the contract was binding and, thus, that § 49-24 did not apply and that the trial court lacked discretion in crafting the remedy. Both parties—at trial and on appeal— along with the trial court, proceeded under the assumption that § 49-24 governed this dispute. The trial court also held that, in exercising its discretion under § 49-24, it did not consider the contract language to be determinative. To the extent the contract might bind the parties to the remedy of foreclosure by sale, we deem this argument abandoned. Additionally, because we do not address this issue, we also will not address whether, if binding, the remedies provision would violate public policy by taking discretion away from the trial court, an issue not adequately addressed by the briefing in this appeal.

[6] Additionally, the defendants argue that the remedies provision is boilerplate, not specific to Connecticut, and provides remedies not available in Connecticut, and, thus, the trial court erred in considering the remedies provision. These arguments are unavailing, however, because the plaintiff did not seek to strictly enforce the remedies provision and the trial court

did not consider it binding. Instead, the court considered it as only one factor in the balancing of the equities.

[7] We also reject the defendants' argument that the plaintiff did not move for a foreclosure by sale, therefore divesting the trial court of the ability to grant such a remedy. The clear language of § 49-24 does not require a party to request a particular foreclosure remedy. We cannot say that the trial court abused its discretion in determining that this argument "exalts form over substance."

[8] General Statutes § 49-27 provides in relevant part: "The proceeds of each such sale shall be brought into court, there to be applied if the sale is ratified, in accordance with the provisions of a supplemental judgment then to be rendered in the cause, specifying the parties who are entitled to the same and the amount to which each is entitled. If any part of the debt or obligation secured by the mortgage or lien foreclosed or by any subsequent mortgage or lien was not payable at the date of the judgment of foreclosure, it shall nevertheless be paid as far as may be out of the proceeds of the sale as if due and payable . . . [and] if the plaintiff is the purchaser at any such sale, he shall be required to bring into court only so much of the proceeds as exceed the amount due upon his judgment debt, interest and costs. . . ."

There are no additional subsequent encumbrancers in this action, so excess proceeds would go to the defendants.